UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CASSANDRA DAVIS, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:15-cv-2501 |
| AKIN, GUMP, STRAUSS, HAUER & FELD, LLP, | § § § § | ECF |
| Defendant. | § § | |

PLAINTIFF CASSANDRA DAVIS' ORIGINAL COMPLAINT
OF RACE DISCRIMINATION AGAINST
AKIN, GUMP, STRAUSS, HAUER & FELD, LLP

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff Cassandra Davis files this Original Complaint because Akin, Gump, Strauss, Hauer & Feld fired her because of race. Ms. Davis was fired for the incredibly petty reason that she parked in the parking garage at 1700 Pacific Avenue. Although Akin Gump provides parking for some employees at 1700 Pacific Avenue, no Black employees are provided parking in this garage. Black employees are expected to park at a remote, inferior parking garage on Elm Street. Akin Gump's termination of Ms. Davis violates the Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

In support, Ms. Davis shows the following:

**I.
PARTIES**

1. Plaintiff Cassandra Davis is an individual who resides in Dallas County, Texas.

2. Defendant Akin, Gump, Strauss, Hauer & Feld, LLP ("Defendant" or "Akin Gump") is a limited liability partnership doing business in Dallas County, Texas. Defendant Akin Gump may be served with process by serving its Managing Partner, J. Kenneth Menges, Jr. at 1700 Pacific Avenue, Suite 4100, Dallas, Texas 75201, or wherever he may be found.

## II.
## JURISDICTION AND VENUE

3. Jurisdiction is appropriate because the causes of action alleged have federal subject matter jurisdiction. Further, Akin Gump has minimum contacts with the State of Texas and an assertion of jurisdiction over Akin Gump will not offend traditional notions of fair play and substantial justice.

4. Venue is appropriate because the acts and omissions giving rise to this case occurred in Dallas County, Texas.

## III.
## FACTS

The facts of this case are listed in question and answer format.

**A.     Who is Cassandra Davis?**

5. Ms. Davis is Black.

6. Ms. Davis has worked in word processing for twelve years.

7. Ms. Davis has eighteen years of experience in the legal industry.

8. Ms. Davis has a bachelor's degree from LeTourneau University and a MBA from Texas A&M University – Commerce.

**B.     What was Ms. Davis' relationship with Akin Gump?**

9. Ms. Davis began working for Akin Gump in 2008.

10. Ms. Davis worked at Akin Gump's Dallas, Texas office on 1700 Pacific Avenue.

11. Ms. Davis worked for Akin Gump as a Word Processing Coordinator.

12. For the duration of her employment, Ms. Davis was an outstanding employee.

13. Ms. Davis consistently received strong performance reviews.

14. In Ms. Davis' most recent performance evaluation, she received several "exemplary" ratings.

15. Ms. Davis was an excellent, hardworking, and diligent employee for Akin Gump.

**C.   Why was Ms. Davis fired?**

16. The reason given by Akin Gump for Ms. Davis' termination is that Ms. Davis parked in the incorrect parking garage.

17. Akin Gump claims that Ms. Davis should not have parked in the parking garage located at 1700 Pacific Avenue. Rather, Ms. Davis should have parked in the remote parking garage on Elm Street.

**D.   Does Akin Gump expect Black employees to park at the Elm Street parking garage, and not at 1700 Pacific Avenue?**

18. Akin Gump provides parking for employees at two locations:  (1) 1700 Pacific Avenue and (2) the Elm Street garage.

19. The 1700 Pacific Avenue parking is significantly better because it is closer and safer than the Elm Street garage.

20. No Black employees of Akin Gump's Dallas office are provided parking by Akin Gump at the 1700 Pacific Avenue parking garage.

**E.   Has Ms. Davis cast doubt on Akin Gump's stated reason for termination because her gym membership allowed her to park in the 1700 Pacific Avenue parking garage?**

21. Ms. Davis was a member of Elevation Fitness.

22. Elevation Fitness maintained a gym in the 1700 Pacific Avenue building.

___

23. Elevation Fitness gave Ms. Davis a parking voucher whenever she used the gym. Below is an example:



24. Ms. Davis' permissible use of the 1700 Pacific Avenue garage because of her gym membership casts doubt on Akin Gump's stated reason for her termination.

**F.    Has Ms. Davis cast doubt on Akin Gump's stated reason for termination because members of the public were allowed to park in the 1700 Pacific Avenue parking garage?**

25. Despite free parking at Elm Street, Ms. Davis would sometimes use the 1700 Pacific Avenue garage when working after 5pm.

26. After 5pm, parking was available for $3.

27. Ms. Davis often left late at night, around 2:00 am.

28. Word processing is a 24-hour operation and much of the work is processing attorney work product after they leave the office.

29. Downtown is not a particularly safe area for a single female to walk through late at night and it made sense for Ms. Davis to park in the 1700 Pacific Avenue garage.

30. There was nothing wrong or illicit with Ms. Davis' use of the 1700 Pacific Avenue garage as a member of the public.

31. Ms. Davis' permissible use of the 1700 Pacific Avenue garage as a member of the public casts doubt on Akin Gump's stated reason for her termination.

**G.    Has Ms. Davis cast doubt on Akin Gump's stated reason for termination because Akin Gump selectively enforced its parking policy?**

32. On information and belief, non-Black employees have parked in the 1700 Pacific Avenue parking garage without authorization and have not been terminated.

33. Ms. Davis was approached by an Akin Gump employee at Whole Foods who said, "I heard you were fired." Ms. Davis stated, "Yes, for parking in the 1700 Pacific garage." The employee said, "Well they would need to fire everybody. I just can't believe it."

34. Akin's Gump selective enforcement of its parking policy is evidence of pretext.

**H.    Has Ms. Davis cast doubt on Akin Gump's stated reason for termination because she was fired with no previous warning, performance improvement plan, and without prior disciplinary history?**

35. Parking in the wrong lot is not a credible reason for terminating a long term, high performing employee with no prior disciplinary history.

36. Prior to her termination, Ms. Davis did not receive a written warning.

37. Prior to her termination, Ms. Davis did not receive a performance improvement plan.

38. Prior to her termination, Ms. Davis did not receive a final written warning.

**I.    Does statistical evidence indicate circumstantial evidence of race discrimination at Akin Gump's Dallas office?**

39. Although Akin Gump's website details a commitment to inclusion, in reality the Dallas office is overwhelmingly white and non-diverse.

40. Akin Gump's website shows that there are 110 legal professionals in the Dallas office.

---

41. According to Akin Gump's website, only three of 110 legal professionals in its Dallas office are Black (2.7%). Fredricka Smith Dorroh is a "Counsel," Stuart Graves is a "Staff Attorney," and Kendrea Tannis is an "Associate."

42. There are no Black partners listed at Akin Gump's Dallas office.

43. Generally, staff attorneys and counsel attorneys are excluded from becoming a partner of a law firm. They are not on "partnership track." It appears that only Ms. Tannis has the possibility of being considered for partnership.

44. There are numerous qualified Black law school graduates, as well as Black attorneys and judges in the Dallas, Texas area. And yet Black legal professions comprise only 2.7% of Akin Gump's Dallas office.

45. The underrepresentation of Blacks in Akin Gump's Dallas office is statistically significant and probative of race discrimination.

**J.     Did Akin Gump resolve this case through the EEOC's administrative process?**

46. On or about September 23, 2014, and within 300 days of her termination, Ms. Davis filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC").

47. Akin Gump failed to resolve the charge.

48. The EEOC issued Ms. Davis the right to file a lawsuit in federal court. This lawsuit is filed within 90 days of Ms. Davis' receipt of this notice of right to sue.

49. All conditions precedent have occurred or been performed.

## IV.
## COUNT ONE: RACE DISCRIMINATION
## IN VIOLATION OF 42 U.S.C. § 2000e, TITLE VII OF THE
## CIVIL RIGHTS ACT OF 1964

50. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

51. Defendant violated Title VII of the Civil Rights Act of 1964 when it terminated Ms. Davis because of her race.

52. Plaintiff has satisfied all jurisdictional prerequisites in connection with her claims under Title VII.

53. Defendant is engaged in an industry affecting commerce and had 15 or more employees during the relevant time period.

54. Ms. Davis is Black.

55. Ms. Davis was qualified for the position of Word Processing Coordinator.

56. Ms. Davis suffered an adverse employment action when she was terminated by Defendant from her position as Word Processing Coordinator because of her race.

57. In terminating Ms. Davis, Defendant treated Ms. Davis differently than other, similar situated, non-Black employees.

58. Because of the actions of the Defendant, Ms. Davis suffered harms and damages within the jurisdictional limits of this Court.

## V.
## COUNT TWO: RACE DISCRIMINATION
## IN VIOLATION OF 42 U.S.C. § 1981

59. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

60. Defendant violated 42 U.S.C. § 1981 when it terminated Ms. Davis because of her race.

61. Ms. Davis is Black.

62. Ms. Davis was qualified for the position of Word Processing Coordinator.

63. Ms. Davis suffered an adverse employment action when she was terminated by Defendant from her position as Word Processing Coordinator because of her race.

64. In terminating Ms. Davis, Defendant treated Ms. Davis differently than other, similar situated, non-Black employees.

65. Because of the actions of the Defendant, Ms. Davis suffered harms and damages within the jurisdictional limits of this Court.

## VI.
## JURY DEMAND

66. Plaintiff exercises her right to trial by jury.

## VII.
## PRAYER

WHEREFORE, Plaintiff Cassandra Davis requests that Defendant Akin, Gump, Strauss, Hauer, & Feld LLP be summoned to appear and answer, and that, after trial by jury, Plaintiff take judgment against Defendant as follows:

    a. Judgment against Defendant for actual damages, including lost wages and benefits (both back pay and front pay), the sum to be determined at time of trial.

    b. Judgment against Defendant for compensatory damages.

    c. Judgment against Defendant for punitive damages.

    d.       Judgment for injunctive relief compelling Defendant to take or refrain from further action as may be necessary to redress Defendant's violation of Title VII and Section 1981.

    e.       Judgment against Defendant for pre-judgment and post-judgment interest at the maximum rate allowed by law.

    f.       Judgment against Defendant for costs of suit, including attorney fees.

    g.       Judgment for such other and further relief, whether at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,
ROB WILEY, P.C.

*/s/ Robert J. Wiley*
Robert J. Wiley
Texas State Bar No. 24013750
Allison C. Reppond
Texas State Bar No. 24085733
Law Office of Rob Wiley, P.C.
1825 Market Center Blvd., Ste. 385
Dallas, TX 75207
Phone: (214) 528-6500
Fax: (214) 528-6511
Email: areppond@robwiley.com